UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
AT CINCINNATI
CASE NO. 12-2-MRB-JGW

MICHAEL CARMAN                                                           PLAINTIFF

v.

COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

REPORT AND RECOMMENDATION

This is a Social Security appeal filed by plaintiff, through counsel, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The main issue presented is plaintiff's contention that the administrative law judge (ALJ) failed to assess adequately plaintiff's need to clean and/or suction his tracheostomy[1] when he (the ALJ) concluded that plaintiff was not entitled to disability benefits. Having examined the record and applicable law, the Court concludes that plaintiff is correct.

**I. Factual and Procedural History**

Plaintiff Michael Carman was born in 1963 and had past relevant work as a machine operator when he applied for Social Security Disability benefits in 2009. Tr. 76, 91. Plaintiff alleged a disability due to severe sleep apnea which had been treated with a tracheostomy, with an onset date of May 9, 2003. *Id.* at 76. After his claims were denied initially and upon reconsideration, plaintiff requested a hearing before an ALJ. On July 28, 2009, an evidentiary hearing was held by ALJ Thomas McNichols, at which plaintiff, represented by counsel, Jessica Fleming, and a vocational expert, Mark Pinti, testified. *Id.* at 529-63. On September 1, 2009 the

---

[1]A tracheostomy is "a surgically created hole through the front of your neck and into your windpipe . . . . A tracheostomy provides an air passage to help you breathe when the usual route for breathing is somehow obstructed or impaired." http://www.mayoclinic.com/health/tracheostomy/MY00261.

ALJ issued an opinion finding that plaintiff was not entitled to benefits because he retained the capacity to perform sedentary jobs available in the economy.  *Id.* at 404-15.  Plaintiff, via new counsel Joseph McDonald, requested that the Appeals Council review the ALJ's decision.  *Id.* at 422.  Citing the testimony of plaintiff and his treating physician, James Fisco, regarding plaintiff's need to frequently clean and suction his tracheostomy, in March 2010 the Appeals Council remanded the case back to the ALJ because "further development is needed to determine if the claimant requires frequent unscheduled breaks during the course of an 8-hour workday."  *Id.* at 424.

In September 2010, the ALJ conducted a second hearing, at which plaintiff, represented by Joseph McDonald, vocational expert William Branig [also spelled Braunig at various points in the record] and medical expert Richard Gardner testified.  *Id.* at 564-615.  In November 2010, ALJ McNichols again issued an opinion finding that plaintiff was not entitled to benefits.  *Id.* at 19-31.  Specifically, the ALJ concluded that though plaintiff could not perform his past work he "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  *Id.* at 31.  In November 2011, the Appeals Council summarily denied plaintiff's request for review, making the ALJ's November 2010 decision the defendant's final determination.  *Id.* at 8-10.

The ALJ's November 2010 "Findings of Fact and Conclusions of Law," which represent the rationale of the decision, were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 9, 2003, through his date last insured of December 31, 2008 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: 1) obstructive sleep apnea with tracheostomy; 2) intermittent left ankle pain; 3) diabetes mellitus; 4) obesity; and 5) continuous alcohol abuse (20 CFR 404.1520(c)).

……………………..

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

....................................

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (RFC) to perform a limited range of sedentary work as defined in 20 CFR 404.1567(a).  He can do work subject to: 1) no balancing or climbing of ropes, ladders, or scaffolds; 2) occasional stooping, kneeling, crouching or crawling; 3) no exposure to hazards; 4) a clean-air work environment with no exposure to extreme cold; 5) no repetitive use of foot controls on the left; 6) no requirement to maintain concentration on a single task for longer than 15 minutes at a time; and 7) no exposure to the general public.

................................

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

...............................

7. The claimant was born on December 8, 1963, and was 45 years old, defining him as a "younger individual" on the date last insured.  The claimant subsequently changed age category to a "younger individual in the age range of 45-49" (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering his age, education, work experience, and residual functional capacity, there were jobs that existed in significant

3

> numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

*Id.* at 23-30 (emphasis omitted).

## II. Analysis

### A. Standard of Review

In a Social Security appeal, the Court is to determine whether the ALJ's non-disability finding is supported by substantial evidence and ensure no error of law was committed. 42 U.S.C. §§ 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation mark and citation omitted). In conducting this review, the Court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a zone of choice within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (quotation marks and citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the SSA asks if the claimant is still performing substantial gainful activity; at Step 2, the SSA determines if one or more of the claimant's impairments are "severe;" at Step 3, the SSA analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at

Step 4, the SSA determines whether or not the claimant can still perform his or her past relevant work; and finally, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  20 CFR §§ 404.1520, 416.920; *Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

The plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 1382(c).

**B.  The ALJ Failed to Consider Properly Plaintiff's Uncontradicted Need to Clean His Tracheostomy**

The main issue raised by plaintiff is his contention that the ALJ failed to "properly assess[] the medical severity of the claimant's condition concerning his tracheostomy" as evidenced by the fact that the ALJ's hypothetical question to the vocational expert "fail[ed] to incorporate a need for unscheduled breaks to clean and suction his tracheostomy."  Doc. 8, p. 1 (emphasis omitted).  The record supports plaintiff's arguments.

Plaintiff has consistently maintained that he needs to clean his tracheostomy between ten and twenty-five times per day.  At his first hearing before the ALJ, plaintiff testified that he cleaned his tracheostomy every thirty to sixty minutes and that the cleaning process took about ten minutes.  *Id.* at 534-35.  At his second hearing, plaintiff testified that his tracheostomy needed cleaning "[a]t least twice a night[,]" *id.* at 575, and that he cleaned it a minimum of ten times in an eight hour period and averaged twenty cleanings per day.  *Id.* at 578-79.  Plaintiff

5

also detailed the cleaning equipment and sanitary conditions needed to clean the tracheostomy. *Id.* at 576-77. Plaintiff's treating physician, Dr. James Fisco, similarly testified at his deposition that plaintiff had told him (Dr. Fisco) that the tracheostomy needed cleaning every couple of hours and Dr. Fisco answered in the negative when asked if he thought that plaintiff's professed frequency of cleaning was excessive, abnormal or unreasonable. *Id.* at 485-86.

The ALJ discounted Dr. Fisco's testimony because Dr. Fisco "has been a consistent supporter of the claimant's disability allegations." *Id.* at 27. That is not a proper reason to discount the testimony of a physician–especially a treating physician. There is no indication whatsoever that Dr. Fisco's consistent opinion that plaintiff is disabled was based on anything other than his training and experience as well as his personal interaction with plaintiff. It certainly cannot be improper for a doctor to reach and then maintain an opinion regarding a patient's condition and capacity to work.

The ALJ further discounted the opinion of Dr. Fisco because he (Dr. Fisco) only saw plaintiff "every four-to-six months . . . ." *Id.* at 28. However, Dr. Gardner–whose opinion the ALJ purportedly gave the most credence to–never saw plaintiff in person. Moreover, the ALJ's conclusions do not align precisely with Dr. Gardner's testimony.

At the hearing Dr. Gardner, who is board certified in internal medicine and pulmonary disease, testified that in his experience "secretions of this degree and requiring this degree of trachea care would be highly unusual." *Id.* at 598. When examined by plaintiff's counsel, however, Dr. Gardner agreed that the equipment that plaintiff testified he needed to perform the cleaning procedure was necessary. *Id.* at 600-601. Dr. Gardner also agreed when asked if every person responded differently to any particular medical condition. *Id.* at 601. Dr. Gardner then more specifically agreed that every individual experienced a different level of secretions after

6

having a tracheostomy performed. *Id.* at 602. Indeed, when asked if it was "true that there are people who experience a need to clean the tracheostomy or to suction themselves out at a high frequency[,]" Dr. Gardner replied that "[t]here are such people with increased secretions." *Id.* at 605. In other words, Dr. Gardner did not testify that plaintiff's professed need to clean his tracheostomy every hour or two was outside the bounds of medical reasonableness. Therefore, the only real evidence regarding plaintiff's need to clean his tracheostomy came from plaintiff and Dr. Fisco. Therefore, the ALJ's conclusion that plaintiff could not possibly need to clean his tracheostomy as often as he indicated in his testimony (*see* Tr. 28 ("it would be difficult to imagine him [plaintiff] having the time to accomplish other activities of daily living or getting enough rest if he spends that much time cleaning his tracheostomy."))[2] is not supported by substantial evidence. [3]

Importantly, the ALJ's failure to accord proper weight to the uncontradicted testimony about the frequency of plaintiff's need to clean his tracheostomy caused the ALJ to ask the vocational expert flawed hypothetical questions. Specifically, the ALJ's hypothetical questions to the vocational expert did not ask the expert to take into account whatsoever plaintiff's frequent need to clean his tracheostomy. *Id.* at 608-09. Plaintiff's counsel, however, did ask the

---

[2]Plaintiff's activities of daily living are meager. Plaintiff testified that he drove for short trips about once per week, did only basic cooking and did not wash dishes, sweep, mop, vacuum, wash clothes or make his bed. *Id.* at 568, 586-87. Plaintiff also testified that he did not go to church, visit relatives, go to the movies, participate in sports, get any type of exercise, or do yard work. *Id.* at 587-88. Plaintiff described his typical day as consisting of watching television and looking at a computer. *Id.* at 588-89.

[3]The ALJ also noted that other medical evidence supported his conclusion. However, none of those other medical professionals addressed the main question in this case: the frequency of plaintiff's need to clean his tracheostomy. *See* Tr. 227-234 (RFC assessment by Drs. Gary Hinzman and W. Jerry McCloud); 235-241 (report by Dr. Martin Fritzhand); 279-282 (report by Dr. Loraine Glaser); 295-97 (questionnaire filled out by Dr. John Barrod, who performed plaintiff's tracheostomy).

expert about the employability of a hypothetical worker who had to use fifteen or twenty minutes of every hour to use medical equipment. *Id.* at 611-12.  The expert opined that such a person could not "maintain or sustain employment with that issue." *Id.* at 612.  The expert also testified that most employers would "[p]robably not" accommodate a hypothetical worker's need to have a sterile environment in which to use medical equipment. *Id.*

Although the underlying medical condition for each claimant is different, this case presents the same fundamental issue as *Roush v. Barnhart*, 326 F.Supp.2d 858 (S.D.Oh. 2004). In *Roush*, a claimant testified that she had to urinate as frequently as every twenty minutes due to her renal dysfunction and interstitial cystitis. *Id.* at 861.  Her treating physician opined that the professed need to frequently urinate was consistent with the claimant's condition. *Id.*  The ALJ found the claimant to not be entitled to benefits because the treating physician's opinion only repeated the claimant's subjective complaints without "actually witness[ing]" the frequency of the claimant's need to urinate. *Id.* at 862.

This Court reversed the ALJ, finding that the ALJ failed to accord proper weight to the claimant's treating physician.  The Court noted that the issue in *Roush*, as in the case at hand, was "whether Plaintiff must provide objective evidence of a symptom for which there is no objective evidence." *Id.* at 869.  The Court noted that there was "no objective evidence" that plaintiff did not need to urinate every twenty minutes. *Id.*  Likewise, there is no objective evidence that plaintiff does not need to clean his tracheostomy frequently.  This Court also found in *Roush* that the ALJ erred by failing to consider the claimant's need to urinate frequently in his hypothetical to the vocational expert, meaning that the ALJ could not properly rely upon the expert's opinion. *Id.* at 870.  The ALJ in the case at hand similarly failed to include plaintiff's need to clean frequently his tracheostomy in his hypothetical to the vocational expert, meaning

8

that the ALJ erred by relying on the expert's opinion that there were jobs available which plaintiff could perform.  Finally, the Court in *Roush* noted that the vocational testimony in the record established that plaintiff's need for restroom breaks meant that there were no sedentary jobs she was capable of performing.  *Id.*  Likewise, the vocational expert in the case at hand testified that there were no sedentary jobs available to a person who needed to take breaks hourly to use medical equipment in a sanitary environment.

Having considered all of the evidence in the case, the Court concludes that the ALJ erred by failing to accord proper weight to Dr. Fisco's opinion and also failed to ask the vocational expert a proper hypothetical.  In short, the ALJ's finding that plaintiff is not disabled is not supported by substantial evidence.  "Because the record adequately establishes Plaintiff's entitlement to benefits and there is no significant evidence to the contrary, this matter should be remanded for an award of benefits."  *Id.*

### III. Recommendation

.              For the reasons explained herein, **IT IS RECOMMENDED**:

This case should be **REVERSED AND REMANDED** for an award of benefits pursuant to sentence four of 42 U.S.C. §405(g).

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived.  Fed. R. Civ. P. 72(b)(2); *see also U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985).  A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).  Poorly drafted objections, general

objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

       This, the 5th day of September, 2013       s/ J. Gregory Wehrman
                                                                                                    J. Gregory Wehrman
                                                                                                    United States Magistrate Judge

G:\Larry\Soc Sec\12-2CINCY, CARMAN, R&R.wpd